Ms. Wiggins, you're up again and you know what we're interested in. Tell us why, in this case, the district court should be reversed. Ms. Wiggins, you're up again and you know what we're interested in. Ms. Wiggins, you're up again and you know what we're interested in. How much time, remind me, he faces a 70 to 87 guideline sentence. How much time has he done that? One more time. We missed you. As of today, Mr. Slavin is a few days short of 55 months. He's been in custody less time than the sentence he's liable to get. And you're asking the district court to dismiss the charges. Don't those factors cut in favor of the government in this case? The Supreme Court didn't say, you know, if they still have a few months left, that's an important enough reason to forcibly medicate them. Here, possibly be restored to competency. That would take at least four months. Then the case has to work itself out. So I believe he will be at just about time served. But I don't. So, counsel, can I ask you about this? And because this is something that occurred to me, and it actually relates more to the last case because. But it seems like for cases that have a guideline range that starts roughly at the two and a half to three years to some maximum, inevitably those cases will always be, by the time they actually get to the court of appeals and work their way through system, they're going to be at the, you know, the minimum. Guideline range will have basically been eaten up by the pretrial confinement stuff. And so, and we see that, I think, in the Gillenwater case, I believe, and in the, I'm going to butcher the name, but the Onaha case. Thank you. I've been trying to pronounce that for myself for a while. Well, I'm sure I didn't say it right. Serious cases. But in those cases, and obviously the case we just heard. So, if we had a rule, if we agreed with you on the rule that, you know, if you're kind of up to the minimum, well, in those cases, they didn't, what they did is they relied on the confinement after the government interest in, I forget what it's called, but after somebody's been sentenced and they're out, but they're under supervision, supervised release. But it seems to me like what's really going on in those cases is, I mean, otherwise we'd just have a hard and fast rule that if it was a roughly three-year sentence, none of those people would ever be medicated. You see the problem with that, because they're always going to, that time's going to be eaten up just to get to us, right? So, what do we do with that? Asking for that as a hard and fast rule, and I don't think CEL asks for that. I think what CEL says is that, you know, in both of these cases today, we're saying, yes, it's a serious offense. What CEL says is, look at whether that is weakened. And one of the things you look at is that they've already done so much time in pre-traumatic custody that the personal deterrent effect of this is sort of almost washed away because they've already been incapacitated for as long as you can do that. So I wouldn't ask for a hard and fast rule. Onoaha is a great example of a case where the person had done, you know, about two, three years, and yet this Court found there's something about this case that is extraordinary, and the public has a right to see it prosecuted. Well, that's something. Back to the guidelines. The guidelines in Mr. Slavin's case are quite long. Is there any case in which this Circuit has held that a person did not, that the government had not met the first CEL factor in a case where the guidelines were as long as they are in this case? I believe so, and I'm not saying that, you know, 55 to 70 months is not long enough. I mean, in both cases, I don't think you look at the length to say, is it serious. Well, you surely look at it. It's a factor in looking to see whether it's serious. And this is a pretty large fraud scheme, and fraud is a serious crime, even though, as you say, it's well-established, and there are victims. So why isn't this a pretty serious offense? It may not end the analysis, but it surely gives the government an interest in prosecuting. What cuts the other way in this case? Well, we think it's a serious offense, but what cuts, what mitigates it is the amount of time he's done, the fact that he's nonviolent, and the fact that the government might have, or teaching the public about the scope of criminal law and how serious some things are. The public knows he's been charged and detained for a very long time. So it's, in that sense, I think the, seem to say, yes, this is the rare case where we need enforceable medication. And again, it should, they said, oh, because it's a white cop for crime, and the general deterrence of getting a criminal conviction is great. And I believe that by charging him and holding him so long, that interest has been served enough that the government's interest has so weakened that this is not one of the rare cases where enforceable medication is appropriate. Have we not said that, for example, in tax cases, general deterrence is a very important consideration in evaluating the value of a criminal prosecution as opposed to a criminal conviction? Or as opposed to some sort of civil process? Because with tax cases, and I'm asking, wouldn't that be true with respect to white-collar fraud, the economic system depends on a certain level of trust and confidence that the laws will be enforced. And so wouldn't that argue in favor of prosecution for, or putting more weight on the general deterrence factor? And you're arguing, with respect to Mr. Slavin, that we focus on the individual deterrence. That fraud is a serious crime and should be the subject of federal prosecution. And I certainly have no issue with the fact that federal charges were brought in this case. The argument is that, yes, he's been federally indicted, and he's been held for a long time. I can't hear you, but I will say that I have a hard time with the argument that an indictment, which is not evidence of any kind, and is not to be taken as any sort of indication of guilt, that the indictment is a fraud. The indictment itself should be taken by the public as a message that the government takes this sort of thing seriously. We're not going to actually prosecute you, but by golly, we're going to indict you. It's kind of a perversion of the notion of what an indictment is. Well, the only reason this indictment wouldn't go forward is because you have a defendant who is severely mentally ill. And these people are great at finding malingering, and they have it with him. And so it's a unique situation, and it's not because it's not a serious crime. It's because of a very unique defendant who was not competent to stand trial. Ms. Wiggin, I'll give you a minute for rebuttal when we're done, because we've taken you over. Thank you. And I apologize for your name on our docket sheet is Wiggins, but I know your name is Wiggins, so I've gone back and forth, and I apologize for that. We'll hear from the government. Thank you, Your Honor. May it please the Court, Matthew Kusin for the United States. I'd like to start with a question about deterrence. I think it's fairly clear from this Court's cases that deterrence, or at least in Omaha, where the statement was that mere detention does not serve deterrence alone, but it's the fact of conviction that benefits society with respect to deterrence. I think that's important in this case. What I also think is important, going back to the questions about the guidelines, are that this is a defendant who, as he sits here today, has served over a year less than the low end of this guideline sentence, and 32 months less than the high end. And going to Judge Erickson's question about that, this Court has never looked at a case where there's that type of delta and held that the special circumstance of time in custody extinguished the government's interest. Well, have we ever found a case in which we've said, no, you ought to dismiss the charges? When I go through the cases in this circuit, we have apparently each time affirmed a district court determination that the drugs ought to be administered. Do you know of a case that comes out the other way in this circuit? Not in the district court. As to the first factor, I don't know of a case. We're looking at the court of governmental interest. Well, in fact, there's never been a case that I can find in this circuit that has reversed a district court order to administer psychotropic drugs. There are some district court orders the other way that says, no, we'll dismiss the charges, but for some reason the government hasn't appealed those. So am I right in thinking there's no circuit cases here that, in effect, come out in favor of the defendant? Correct, Your Honor, no circuit cases that come out in favor of the defendant on that first factor. Okay, so here's my difficulty in general, and I'm not sure how it applies to these two cases in particular. There does arrive a point at which the government's interest in prosecuting somebody who has been held in custody for all the time he would have served otherwise becomes so diminished that we're not going to invade the defendant's personal liberty and administer these drugs. And our cases say we review the district court's determination de novo, which is to say we look at the record and try to figure out when that point is reached. How do we do that? I have the same problem in both cases. It's almost always going to be a crime that has some seriousness to it. The defendant, in most cases, is going to be approaching, if not past, the time of the sentence. In this case, we're not quite there. And we may or may not have any evidence in the record about civil commitment. So how do we do this job? Tell us how we do it. Your Honor, what I would say to that is certainly, at a point, as the time served goes beyond the guideline maximum or the estimated guideline maximum, the interest could become less, the government's interest. I mean, I think especially if that's a point in itself, that the analysis would change and the government's burden would be much more difficult. But looking at the established precedent in this circuit, that's just not the case here. On Wahoo, middle of the guideline range, at the time of the appeal, then comes back up on the second appeal and he'd already served, the defendant had already served longer than the guideline range. But the court still upheld the government's interest. In Gillenwater, it was a month less than the low end. Whereas here, we have 15 months less. So I agree at some point. Judge Erickson. How long is the guideline supervised release in Mr. Slate? Is this a five-year presumptive supervised release term? I believe it's a three-year, Your Honor. Okay. All right. And so would it be appropriate to look at the importance of supervised release restrictions in connection with the type of crime? So with supervised release of a white-collar defendant in a fraud case, you would have financial restrictions, inability to have a trust relationship with anyone for money. Are those factors that this court has taken into consideration before and would they be appropriate to take into consideration here? So looking at the cases, specifically with respect to fraud or white-collar cases, I don't believe the court has looked at supervised release. Certainly, the court in Gillenwater and Oahu looked at supervised release as opposing to the time spent in custody. And here, I do think it's very important with a white-collar case. There are a few things, right? I mean, supervised release, the idea that it's rehabilitative and increases the odds of the defendant's success. But exactly what you said, Judge Erickson, we'll have financial restrictions, we'll have restitution placed in order, and we'll also have the ability of the district court to impose special conditions such as psychotherapy, and through the analysis, the district court could also impose medication, right? Follow the recommendations of a physician. Usually, it's follow the recommendations of your mental health provider, yeah. Exactly, which would all be available for the district court here. So it's not only deterrence, but as well, the benefit of supervised release. I agree with both of those. One of the things that strikes me in both of these cases, and I'm not suggesting it occurred in any bad fashion, is the recommendation for the use of the drugs occurs after the defendant has been in custody, if you will, for a substantial period of time. Should there be, and I understand use of the drugs is a last resort. We don't want to do it first. But should there be some burden on the government to move more quickly in these cases so that we don't have the sentence almost served, if you will, before we get to this point? I mean, it is the time, the restrictions and the limits, and the time itself is statutory. And I guess putting it on the government is a bit speculative or working out procedurally because it is, like in this case, it's the defendant who seeks the competency hearing. Certainly in other cases, it could be the government. But it's the defendant here who seeks it, goes through the process of a first psychiatrist coming to the court and saying, you know, yes, this person, this defendant is mentally incompetent. And then following 42-41 to go through that process, you know, it is statutory. And as this court has said before, the Bureau of Presence here went through the Harper hearing to see if there was another reason to administer antipsychotics. That wasn't there. So then that's when it came back to the district court for the selling. So in this case, it followed the statutory guidelines as to time. And that all started when the defendant first sought. And I say in this case the defendant is not complaining about delay in the process. And speedy trial is told during all that time because it's a motion by the defendant, correct? Correct. But it does strike me that when the sentence is as long as this one, it is a little It would be an easier case to determine were we at an earlier point in the proceedings. And I understand it's not nobody's fault. It's just an observation. You've got a little bit of time left. If there are no further questions, Your Honor, the government just requests this court affirm the order of the district court. Thank you. And let's give Ms. Wiggin a minute for rebuttal. Thank you. Brief. I think I was able to make most of my points. In the opening, I would just say if we're looking at supervised release, two points I want to make. One is side briefness. So these cases are not in our briefs. But in terms of We've lost you again for a second. In terms of forcing a person to take antipsychotics on supervised release, I believe this court has sort of a heightened test that you'll find in the cases of Cope and Williams. And it's not going to be a simple matter. And also, you want to avoid the analysis including future dangerousness, which Spell says not to do. The other thing He'll be on supervised release. Interestingly, I believe There are two appeals many, many months over what he was facing. Mr. Omaha was acquitted in district court. So this case is going. I would not force medication just for supervised release. Thank you. Was that a was that a not guilty by reason of insanity? Sir, I could bring that. If you would like. No, we can we can we can find it. It's a public record. We'll figure it out. Thank you to both counsel for their arguments and briefing in this case. And the United States versus Slavin will be submitted.
judges: HURWITZ, VANDYKE, Ericksen